The first argued case this morning is No. 21, 1960, Prisua Engineering Corp. v. Samsung Electronics America. Mr. Carey. Good morning and may it please the Court. Prisua Engineering's 591 patent, invented by Prisua's founder, Dr. Prieto, claims a specific system for replacing an image in a video stream with a user-selected image taken from a second video stream, substituting the second for the first image, and then creating a third stream containing the edited video. The way that the claims operate is the first stream, the first image, comes from what's selected, and that's the image that is supposed to be replaced. The second image comes from the stream that the claims call the user input stream. That's the image that the user wants to use new. That's the replacement image. Then the third resulting composite modified stream is called in the claims the displayable edited video stream. The claims have these three defined video streams, which have important functions. Now, the way that the claim is set up to operate, it performs this selection and substitution process in a very specific way. What will be seen is that the specific way the claims of this patent operate are fundamentally different than the way the other image processing systems of the two prior references operate. In the 591 patented claims, what happens is the user uses a data entry device. For example, a keyboard or a touch screen, something which allows entry of data. The user uses a data entry device that's coupled with a display device, which displays the original video. Again, that's the video that has the image that is desired to be replaced. The user interacts, uses the data entry device, operates the data entry device to interact with the display device and select one or more pixels to use as the first image, which is again the image to be replaced. Then the user has something that the claims call a video... Is that something that the user can do, has to do on a pixel by pixel basis in the claims, or is it enough for the user, for example, to circle a face and then the face consists of a number of pixels, but is that a selection of pixels in your view? The claim language states selection of one or more pixels. The user could either pinpoint a particular pixel or a group of pixels. So if the user just circles the face in the original video, that would be a selection of pixels? I believe so, Your Honor. Now that issue doesn't drive any issue or dispute in this appeal, but I believe that's a fair reading of that claim language. If I'm correct, one of the issues in appeal is what is disclosed in Citrix Figure 1, including whether there's a display, right? That's an issue and dispute? That's a very big issue and dispute. So isn't that a fact question, that is, what is disclosed in the prior art reference and one that the board resolved and seems to have had substantial evidence in favor of what they found? That's the correct way for us to ask the question, right? I think the framing of the question is proper. Okay. And so why isn't it that they have an expert who says a person of skill in the art would read this as an actual display and not, as you call it, like a mere cartoon or a conceptual drawing? So why wasn't it appropriate for them to credit that testimony? Very simply, Your Honor, because that is an obvious misreading of the prior art reference. The court operates under the substantial evidence standard, but as the Supreme Court has instructed and this Court's precedent has confirmed, that's not a rubber stamp of the agency fact finding. The court here looks at the legitimacy of the fact finding to determine if it has enough support in the record. And here, if simply looking at that disclosure, because the finding on Citric, the board's finding that Citric disclosed... So there are two claim limitations that we've brought in this appeal, that we're focusing this appeal on. The first one is whether there is in Citric and Centner a display device displaying an original video stream. The board's finding on that question is entirely dependent. The only citation to Citric is what's in Citric Figure 1 for that. As interpreted by Samsung's expert, who says that one of skill in the art would read that as an actual physical display. And this Court has said, in the cases that we've cited, for example, the Calum Technologies case, that when an expert, paid expert testimony, when their conclusions aren't supported by the actual reference, the expert testimony is not in a given way. Expert testimony not supported by the reference. Okay. Because, Your Honor, if you look at Figure 1 of Citric, there is clearly no display being shown. What they're calling the display is identified in Figure 1 by the number in that figure is number 120. Number 120 is the box with two faces, okay? And that is a depiction of the video, the program, the video program. It's not a device displaying the program. It's very clear in Citric that that is true. Paragraph 63 of Citric specifically says that Item 112 is the video program. It's not a device. It's not a piece of equipment. Can you give us the appendix to Paragraph 63 of Citric? It's appendix page, Your Honor, 1987. Thank you. I'm sorry. That's the wrong one. It's appendix 1985. Thank you. And I misidentified the number in the figure. It's number 120. That's what the board relied upon as being the video display device. So Paragraph 63 of Citric on appendix 1985 says that what 120 is in Figure 1, what 120 is is the program content. It's not a piece of equipment. I'm not following why that contradicts what the expert said. Because it's not a disclosure, Your Honor, of a display device that's playing a video. It's a depiction of what's in the video itself, the data in the video. But it's a display of the program. It shows what the program does. It's not a disclosure of a device. Look at, let me show you Citric. Look at Figure 13 in Citric. Pardon? Which one? Figure 13 in Citric, which is appendix page 1978. At the bottom of this figure, this figure is described in the spec of Citric as an embodiment of the output of the Citric system. There's a display shown in Figure 13. When Citric wants to disclose a display, he clearly knows how to disclose a display. And by the way, the 1344 inside the display of Figure 13, 1344, the spec reference of 1344, is a video program. So there's a disclosure. Isn't the program control what's displayed? The program, Your Honor, is the video content. It's the movie or the TV show. It's not the thing displaying the movie or TV show. And there's no disclosure. Figure 1 just talks about the content. It says, here's content. There's two faces. We can take one face and replace one face with another face. But there's no, in Citric, there's no display of that content, of that original content. And there's a very good reason why in Citric there's no display of the original content. Because Citric has no function or purpose whatsoever for display of the original content. In the 591 patent, the reason that there is an image display device displaying the original video with the frame you want to take out is because the user goes in there and selects what you want to take out. But in Citric, the user doesn't do that. In Citric, the selection of what to take out is not done by the user. It's done by a computer program, which Citric calls the tracking subsystem. So the user doesn't identify, in Citric, what to take out. Therefore, the user doesn't need to see the video in order to say, I want to take that out. There's no purpose of an original video display displaying the original video in Citric. So he doesn't have it. He wouldn't even be able to use it if he had it. What about Sempner? Sempner, I notice, does not deal with Claim 2. But it deals with all the other claims. If we were to ignore Citric altogether, would we have to reverse as to Claim 2? Even assuming that we agreed with Sempner's assessment of the other claims? And Claim 2 is not an issue in your district court case, so maybe you don't care. But just as a matter of trying to figure out which of these two references has what effect. Your Honor is correct. Claim 2 was found obvious over Citric. So if Citric doesn't render Claim 2 obvious, the board found that Sempner does not render Claim 2 obvious. So there would be nothing rendering Claim 2 unpatentable. Would you be urging a reversal on that issue? Or is that not an issue that ultimately is significant to your case? I'm sure my client would like to have Claim 2 back. But the focus of our appeal is on the limitations of Claim 1. And we have focused on that. And even if. I think it's very obvious if you look at Figure 1. It's obvious in Citric. It's obviously not disclosing a display device. It's just disclosing the program, not the display of the program. And Dr. Delk, the petitioner's expert, doesn't give any reason. But if the program requires a display, doesn't that satisfy the claim? Your Honor, not every program requires a display. I can hand you a DVD that has a program on it. It may or may not be displayed. It's a disc with data saved on it. In that case, video data. So that's the program. And that's what is in Figure 1. It's a program. It's a picture from a program. It's not a display. It's like a TV monitor, computer monitor, something displaying a program. Figure 1 is just disclosing the program itself. Again, Citric doesn't even use a display of the original program. In the patent of 591, the user needs to display the original program to find the thing that he wants to replace. In Citric, the user doesn't do that at all. There's an automated system called the tracking subsystem, and it generates, identifies in the video, all the reference objects that it wants to tag for potential replacement. That's an automated process. The user doesn't do that. Citric's computer does that. The user then comes in. In Citric, though, when the user decides, well, I want to replace, let's say, Judy Garland, among the video library that you have in the Citric setting, you could have replaced the cowardly lion or the scarecrow, but wants to replace Judy Garland's face. Isn't that user, by making that determination, in effect selecting one or more pixels for replacement? Depending on how that is implemented in Citric, it's unclear. For example, the user could be given a text list of the characters. But you're saying that the problem is that the cowardly lion and Judy are not displayed to the user, for the user at that point. Correct. In Citric, what the user is getting, it's getting the reference objects that the computer has tagged from the original video, but the user is not looking at the original video. It's creating its user input, it's taking its own face, and it's causing its own face to be plugged in to one of those reference objects. The reference objects in Citric are analogous to the first images in 591. And you're saying that the user in Citric never sees the faces that are subject to the replacement? What the user doesn't do in Citric is the user doesn't select the image to be replaced from a display of the original video. Okay, but that's your interpretation. The petitioner's expert had a different interpretation. Why is that interpretation unreasonable? Well, we get now... As to whether or not there is any display of an original video, the expert merely and only points to Figure 1, and Figure 1 does not show a display. Did you have an expert who contradicted the petitioner's expert? Yes, Your Honor, we do. We submitted opposing expert testimony on that. The inventor? The expert was the inventor, correct. Okay, well, we're out of time. We'll give you two minutes for rebuttal. Thank you. Good morning, Your Honors. I may please the Court. Richard Rainey on behalf of Samsung. This is a substantial evidence appeal with two independent bases. Before you get into the merits of your argument, could you help me out on Claim 2? Sure. Does Claim 2 rely solely and exclusively on Citric? Am I right in that? That is correct, Your Honor. But they've not separately appealed any limitations with respect to that, and so therefore the issue is the only issue that's been appealed are the two limitations in the independent claim, Claim 1. So you think they've waived any argument with respect to Claim 2? Absolutely, Your Honor. It would have been incumbent upon them if they wanted... You're saying Claims 1 through 4. Right, but there's no independent argument about Claim 2. But what if there's two limitations at dispute in the appeal? So what if we don't find both of those in Citric but we find them in Zenfner? Claim 2 would survive, wouldn't it? Except there's no argument in their brief that you should reverse only on Claim 2. So, again, just applying basic waiver principles, that issue is... This entire appeal rises and falls on the two independent grounds in Claim 1. That's our position. But if we disagree with you entirely on Citric and agree with you entirely on Zenfner, then Claim 2 survives. It just doesn't matter logic, doesn't it? As a matter of logic, but not as a matter of... There's no... The words... That argument is nowhere in the topside brief in this case. But I understand the point, and logically, yes, that would be correct. I would also add Claim 2 is not issued in the district court case. So that's perhaps why they haven't separately challenged that. Let me just focus, since the topside argument focused mostly on Citric and on this argument about image display, I believe counsel said that the only disclosure is in Figure 1. That's incorrect. It's simply incorrect. It's the text of the entire reference and the testimony of the expert. And, in fact, if I direct the court to our expert's declaration, Paragraph 11, at Appendix A2156, Paragraph 11, where our expert testified to the board, based on these disclosures, and I'm quoting, and he's talking about the background, the entirety of the patent, where the patent talks about bringing in general-purpose computer technology. And, by the way, this was also at issue with respect to Claim 11 in the prior appeal, this general concept. Our expert says, A person of ordinary skill in the art, a posita, would understand that the personal computers disclosed by Citric would utilize an input device, such as a keyboard, mouse, and or touch screen, which input devices were all well-known in the art as evidenced by the texts referenced by Citric, at least because a user would need to select a replacement image as well as a target image in order to carry out certain aspects of the invention disclosed by Citric. Okay, but that passage you just read doesn't address the argument Mr. Carey is making, which is that it doesn't select from the original video feed. He went, our expert went on, so that's setting up at Figure 1, because he's citing to Figure 1 in this paragraph, has to be read, understood by a person of ordinary skill in the art, as in the context of a personal computer where you have a display and you have input devices, including a touch screen. And then he goes on to specifically deal with this limitation in other paragraphs of his report. He talks about, for example, in Citric itself, in paragraph 7, this is at appendix 1979, it is a further object of the present invention to provide various means for selecting, tracking, and substituting portions of the predefined audio-visual presentation, that's the original video, with the user's selected visual image. That's the image you want to replace. So Judy Garland is in the predefined audio-visual presentation, to borrow Judge Bryson's example. Our expert goes on to say, a person of ordinary skill in the art would understand that the user selects images with a data entry device such as a keyboard, and that a person of ordinary skill in the art would also understand from Citric that a user would necessarily have to select one or more pixels in order to select an image or portion of an image as disclosed in Citric. But the question posed, I think, by Mr. Carey is, is there any point, based on Citric, in which Citric says that the previous video, the first video, the one from which the target images are drawn, is in fact displayed to the user? Yes, it says in... Setting aside what Dr. Delp's characterization, where in Citric is that laid out most clearly in your view? Paragraph 31, well, first of all, the figure 1 itself is showing you what looks like a TV screen with the original characters in it. So that's one. And then the text accompanying figure 1, which is in appendix 1980, this is paragraph 31 of Citric, and I quote, in the figure, and this is figure 1, representations of two people, a first person, 123, and a second person, 127, are visible in the program video 120. Our expert relies on that. The board pointed to that specifically. We submit that as substantial evidence on that basis. The court should affirm. And that, do you think, is the clearest example of a display of the original video to the user? Absolutely, yes, I do. Could the board alternatively have credited Dr. Prieto and said, it's just a cartoonish, you know, sort of conceptual drawing. It's not an actual video display. So on this point, I don't know that that would be a credible finding. I would challenge that as lacking substantial evidence. This finding plainly is supported by substantial evidence. But in either case, under this board's review of agency findings, even if there is a reasonable interpretation on the other side, because our interpretation is certainly reasonable, the court has to affirm. Can I ask you about the data entry device limitation? Where does Citric teach that it's the first image that is being selected by the user as opposed to the second image being selected by the user? Where do we find that disclosed in Citric? Well, so first of all, there's no separate challenge to first and second image. Well, there is the for us, but you think it was waived. Is that right? Well, so there's an argument that the board was confused about the first and the second image in its findings on Citric, and that is absolutely not correct. The only argument that was made by Pursua Below is actually in their patented response that Citric does not disclose that the user operates Citric's computer to select at least one pixel generally. They never challenged the first image. Which image the pixel had to come from. Correct. But they are saying before us that that is an issue, correct? I think they're trying to make that argument. But if you look at Appendix 277, which is page 58 of our paper below, and 278, we clearly point out that both images, the first image and the second image, are selected. And we cite to and quote from the Citric reference where that happens. And let me just get to this point, Judge Stark, that you raised. Because if you look, and again, I'm switching over to this waiver point that I want to point out. At Appendix A836 is where Pursua responds to the argument I just pointed you to at A277. The only thing they say, the entirety of their argument below is, quote, Citric does not disclose that a user operates Citric's computer to select the at least one pixel. Full stop. That's it. The only cite they have is to Prieto's declaration, paragraph 157, which is at Appendix 3305 to 3306. What she points to, and that is very clear, is the selection only of the replacement image. That is, the second image. There's no discussion at all in that of the first image. And so when the board discusses the second image in its opinion, which is what they're pointing to as being confusion, the board is responding to the only argument that Pursua made below. They say to us in their grave wreath at 3 that they did make this argument. And they cite to A820 to 25, A3262, A3274. I take it they're wrong that they made that argument. Correct. Is there an easy way for me to understand that? I'm pointing you to the totality of what they cited in response. How would you characterize these seven pages where they say they did make the very argument they're making to us? As just generalized arguments that were not specific to this particular issue, where we raised it and they responded to it. But regardless, our paper at A578, I'm sorry, A277, A278, argues and points to disclosure in Citric for both the first image and the second image. It's also worth pointing out here, this is one of the two references on which the board, there's been no discussion of Centner here at all. Where do we find their response, answer to that? Where do we find their response, the portion of their response? The seven or eight pages that they cite. Where do they respond to this argument in the petition? The only, the page where they respond is at A836. A836? A836. That's the corrected supplemental patent owner response. So it's that one sentence, Citric does not disclose? That's correct, Your Honor. If the court has no further questions, we would ask the court to affirm. Okay. Thank you, Mr. Rainey. Mr. Carey, you have two minutes. Your Honor, quickly, and then I wanted to talk about Centner, but very quickly, the suggestion that item 120 in figure one of Citric discloses a TV screen is completely unfounded. Not even Dr. Delp says that. That has never even been argued. Item 120 in Citric is specifically defined to be program content, not a piece of equipment like a TV screen. Just because it's a rectangle, is every rectangle in the patent drawing now a TV screen? That's not a legitimate argument. Second, on claim two, we appealed as to claims one through four and eight. Claim two is dependent on claim one. So the limitations on claim one that are the subject of our brief, if you agree Citric doesn't disclose those, then it doesn't disclose them for claim two either, and there would be no basis for obviousness on claim two. We did appeal as to all the challenge claims, one through four and eight. Just look at our conclusion. But you didn't have no separate argument with respect to claim two. No separate argument as to two. But two is dependent on one, so it has the same limitations as one, which are the ones that we did discuss. So I want to get into Centner, because that has come up, and I haven't had a chance to talk about that yet. Centner lacks, like Citric, the display showing the original video stream, and it also lacks the data entry device that the user operates to select the image to be replaced. And the reason that Centner lacks those two things is, in Centner, a digital artist, not the user, a digital artist takes the original videos and creates prepared videos by identifying all the items in the video content that want to be targeted for potential replacement and stores them in a database. Where did you make that digital artist argument below? Because your friends on the other side argue you waived it. Well, we argued that the disclosure wasn't there, that Centner had no disclosure of a display device for an original video or for a data entry device. Because of a digital artist? Not specifically as to the digital artist, but we argued, well, you could forget the digital artist. The point is, there's no user in Centner that is identifying which images to be targeted for replacement. The user is not involved in the Centner process at that time. The user comes in after the prepared videos have been prepared, and they've been targeted, they've been defined as having things that could be substituted out. Then the user comes in and can select its image to stick into one of those prepared videos. In the Centner reference, there's neither a display device showing the original video, because the user comes to only prepared videos. The only argument that has been advanced for this is that there's a library in Centner of videos. But the library of videos in Centner is uniformly and exclusively a reference to the prepared videos that have already been modified from the original videos. The library is not the original video. In other words, it's not an original video library. I think we're out of time. Okay, I thank the Court very much for its attention. Thank you, Mr. Curry. Thank you, Mr. Rainey. The case is submitted.